**SO ORDERED.**

**SIGNED June 5, 2026.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| In re: | Case No. 25-50479 |
| Logan Christopher Hisaw,<br>　　　　　*Debtor* | Chapter 11 |
| | Judge John W. Kolwe |

### Memorandum Decision

On April 28, 2026, the Court held a hearing to consider Confirmation of the Debtor's Third Amended Plan of Reorganization under Subchapter V of Chapter 11 (ECF #108).[1] The United States Trustee ("U.S. Trustee"), A&D Mortgage, LLC and Advancial Federal Credit Union objected to the Plan. At the inception of the hearing, the Debtor informed the Court that the objections of A&D Mortgage and Advancial had been resolved, thus leaving only the objection of the U.S. Trustee. The testimony of the Debtor in support of confirmation was proffered, and the Plan with

---

[1] The confirmation hearing was initially continued from April 28, 2026 to May 12, 2026, for the Court to announce its ruling. The hearing was subsequently continued to June 2, 2026, at the request of the Debtor. On June 2, 2026, the Court announced its ruling and this Memorandum Decision sets forth the reasons in support of its ruling.

1

attachments, the Monthly Operating Reports and the Ballot Summary were admitted into evidence. At the conclusion of the hearing, the Court indicated that the requirements for confirmation had been met, with the exception of the issues raised by the U.S. Trustee in its objection, which are: (1) whether the Plan may be confirmed as a: (a) consensual plan under 11 U.S.C. § 1191(a), or (b) nonconsensual plan under § 1191(b); (2) whether the Plan may include a temporary injunction against certain creditors; (3) whether the Debtor may withhold a portion of his projected disposable income each month for deposit into a savings account; and (4) whether a discharge after three years is appropriate when the Plan period is five years. The Court took these matters under advisement following the confirmation hearing and now rules as follows.

**Analysis**

**1(a).  Is the Plan Confirmable under § 1191(a)?**

The Plan includes 11 classes, seven of which are impaired. Five of those impaired classes submitted ballots voting in favor of confirmation: Class 1 (AmeriCredit), Classes 2 and 3 (American Bank), Class 6 (Kubota), and Class 8 (Caterpillar). The remaining two impaired classes did not return a ballot and thus did not vote to either accept or reject the Plan: Class 7 (Ally Bank) and Class 10 (general unsecured creditors). The Debtor has requested that the Court confirm the Plan as a consensual plan under § 1191(a) notwithstanding the silence of the two nonvoting classes.

Section 1191(a) provides: "The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section . . . are met." 11 U.S.C. § 1191(a). One of the requirements of Section 1129(a) is that "with respect to each class of claims or interests—(A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8). Finally, a class of claims accepts a plan if "such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors . . . that have accepted or rejected such

2

plan." 11 U.S.C. § 1126(c). Taken together, to be considered a consensual plan, each class of creditors must either vote to accept the plan or be unimpaired.

Here, five of the seven impaired classes voted to accept the Plan. But the other two impaired classes did not vote to reject the Plan; they simply did not vote. Thus, the question facing the Court is whether the Plan can be consensually confirmed under § 1191(a) if an impaired class of creditors does not vote. The Debtor contends it can and should be, relying on the holdings and reasoning of two cases: *In re Franco's Paving LLC*, 654 B.R. 107 (Bankr. S.D. Tex. 2023), and *In re Hot'z Power Wash*, 655 B.R. 107 (Bankr. S.D. Tex. 2023).

In *Franco's Paving*, the court concluded that a non-voting impaired class should be ignored in determining whether a plan has satisfied § 1129(a)(8), grounding its decision, in part, on the computation set forth in § 1126(c) for determining whether a class has voted to accept or reject a plan (both in number of claims and dollar amount of claims):

> The instant case raises the question of what occurs when no creditors in a class vote either to accept or to reject a plan. Mathematically, both computations become $0/0 = E$ (where E is simply the quotient). Applying basic mathematical principles, one must calculate E such that $0 \times E = 0$. The obvious answer is that E can be any number and is therefore indeterminate or undefined. In practical terms, the equation cannot be solved. Thus, the calculation required by § 1126(c) cannot be performed. . . . The Court finds that attempting to do what the laws of mathematics prohibit is an absurd proposition and could not have been intended when Congress enacted the current version of § 1126. By implementing a denominator that includes only votes actually cast in § 1126, it logically follows that Congress presumed that at least one vote was cast.

*In re Franco's Paving LLC,* 654 B.R. at 109-10 (Bankr. S.D. Tex. 2023). The court then cited to its equitable power "'to administer the law according to its spirit, and not merely by its letter,'"[2] to conclude:

> The Court finds that in making the change to § 1126 when enacting the Bankruptcy Code, Congress presumed the existence of at least one vote in each class. In a situation where no votes are cast, the Court holds that the class should not be counted for purposes of § 1129(a)(8).

*Id.* at 109-10.[3]

In agreeing with *Franco's Paving*, the *Hot'z Power Wash* court stated:

> [S]ince the application of the mathematical calculation in § 1126(c) is absurd as applied to a nonvoting class, and because the Code is silent on the correct treatment of a nonvoting class, this Court is left with only one option: when an impaired class of creditors fails to cast a ballot, that class will not be counted for purposes of whether § 129(a)(8) is satisfied.

*Hot'z Power Wash,* 655 B.R. at 118.

Both *Franco's Paving* and *Hot'z Power Wash* found that Congress drafted § 1326 based on the presumption that at least one vote would be cast in each impaired class. They then found, based on the mathematical impossibility that results when there are no votes in a class, that a void existed in the law in those cases in which an impaired class does not vote. They then turned to their equitable powers to fill that perceived void by declaring that if there are no votes in a particular class, then that class should not be counted for determining whether the plan is consensual. Both *Franco's Paving* and *Hot'z Power Wash* also based their decision on what they view as Congress's preference for a consensual plan, as reflected in the subchapter V trustee's duty to "facilitate the development of a consensual plan" under § 1183. *See*

---

[2] *Id.* at 109 (quoting *Johnson v. Norris*, 190 F. 459, 463 (5th Cir. 1911) (itself quoting *In re Kane*, 127 F. 552, 553 (7th Cir. 1904))).

[3] *Franco's Paving* cited *Truvillion v. King's Daughter's Hosp.*, 614 F.2d 520 (5th Cir. 1980) for the proposition that "[w]hen faced with an 'unusual case, certainly not contemplated in the statute,' a court should read the statute to align with congressional intent and 'the statute's design.'" *Id.* (quoting *Truvillion*, 614 F.2d at 527).

4

11 U.S.C. § 1183(b)(7); *see also Franco's Paving*, 654 B.R. at 110; *Hot'z Power Wash*, 655 B.R. at 119.

If the Court adopts the reasoning of *Franco's Paving* and *Hot'z Power Wash*, as urged by the Debtor, the nonvoting classes can simply be ignored and the plan can then be confirmed consensually since five impaired classes voted to accept the plan, and there are no affirmative rejections.

The Court now turns to the U.S. Trustee's objection, which stresses that the *Franco's Paving* and *Hot'z Power Wash* cases are outliers. According to the U.S. Trustee, the majority, if not all, reported decisions other than *Franco's Paving* and *Hot'z Power Wash*, have held that each impaired class must affirmatively vote to accept the plan, and that if any impaired class fails to vote, then the plan may not be confirmed on a consensual basis. *See, e.g., In re Thomas Orthodontics, S.C.*, No. 23-25432, 2024 WL 4297032 (Bankr. E.D. Wis. 2024); *In re Florist Atlanta, Inc.*, No. 24-51980, 2024 WL 3714512 (Bankr. N.D. Ga. Aug. 7, 2024); *In re M.V.J. Auto World*, 661 B.R. 186 (Bankr. S.D. Fla. 2024); *In re Sushi Zushi of Texas, LLC*, 2025 WL 957792 (Bankr. W.D. Tex. Mar. 28, 2025); and *In re 5 Star Home Care, Inc.*, 2026 WL 1127906 (Bankr. D.S.C. April 24, 2026).

The Court has carefully considered each of these cases and finds them to be persuasive, thus joining them in declining to adopt the *Franco's Paving* and *Hot'z Power Wash* approach to dealing with nonvoting classes. As these courts have found, there is not a void or gap in the law, and the Code is not silent on this issue. Section 1129(a)(8) provides only two options with respect to each class of creditors: it must either (A) accept the plan or (B) not be impaired under the plan. If there are no votes within a class, then it cannot be said that the class has accepted the plan. And no amount of arithmetic can change this simple conclusion, which is drawn directly from the straightforward wording of the statute.

> The arithmetic of § 1126(c) is intended to answer the question: does this group of creditors agree with the debtor's plan? Dividing by zero or not, engaging in the arithmetical exercise becomes futile where no creditors in a class vote. The majority and numerosity provisions of the

5

statute need not be considered once the numerator in the equation is determined to be "0" (i.e., no creditor voted). There is no reason to consider an "absurd, unsolvable" denominator because when no creditors in a class affirmatively vote, the class cannot accept the plan, no matter what the denominator may be.

*****

[A] class either accepts the plan under § 1129(a)(8), or it does not. Whether the individual creditors in the class have accepted, rejected, or abstained, the Court need only consider whether the class has "accepted"—if it hasn't accepted, the section is simply not met. The Debtor must show the class accepts, not merely that the class "doesn't reject." Nothing in the Code allows the Court to equate abstention of a class with acceptance.

*In re Sushi Zushi*, 2025 WL 957792, at *3-4.

Simply put, if there are no votes cast within a class, then that class has not accepted the plan and thus § 1129(a)(8) is not satisfied. Here, two classes did not receive any votes. Thus, § 1129(a)(8) is not met, and the Plan is therefore not confirmable as a consensual plan under § 1191(a).

Accordingly, the Court hereby sustains the U.S. Trustee's objection to confirmation as a consensual plan.

**1(b). Is the Plan Confirmable under § 1191(b)?**

Subchapter V also allows for a plan to be confirmed on a nonconsensual basis under 11 U.S.C. § 1191(b), which provides:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." Thus, a nonconsensual plan may be confirmed even without any impaired class voting to accept the plan, provided that the

6

> plan does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the plan.

Additionally, under § 1191(c)(1), for a nonconsensual plan to be "fair and equitable" with respect to secured claims, it must meet the chapter 11 requirements of § 1129(b)(2)(A); as to other classes of claims or interests, the plan may be confirmed nonconsensually if it meets the requirements of § 1191(c)(2) and (3). Under § 1191(c)(2)(A), the plan must provide that all of the "projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan." 11 U.S.C. § 1191(c)(2)(A). Section 1191(c)(3) requires that the Debtor show that he will be able to make, or that there is a reasonable likelihood that he will make, all payments as proposed in the plan, and that the plan provide appropriate remedies in the event of a default in making payments.

The Debtor requested that his Plan be confirmed under § 1191(b) if it cannot be confirmed under § 1191(a). Based on the record here, and subject to the Court's decisions below regarding the Debtor's proposed use of a Savings Fund and changes necessary to the discharge provision of the Plan, the Court finds that the plan may be confirmed under § 1191(b). First, the plan does not discriminate unfairly. Second, the plan is fair equitable as to secured creditors because the requirements of § 1129(b)(2)(A) are satisfied. Third, it is also fair and equitable to the unsecured creditors because the Debtor is dedicating all of his projected disposable income to plan payments over a five-year period. Also, Article 8.8 of the Plan includes appropriate remedies in the event of a default, as required under § 1191(c)(3)(B). Moreover, Article 9 of the Plan provides that if the Plan is confirmed under § 1191(b), then discharge is delayed until the Court grants discharge after all payments are made (subject to this Court's finding, as discussed below, that discharge may not occur until all plan payments have been completed). Finally, Article 9 also provides

that the property of the estate shall not vest in the Debtor until the case is dismissed, or discharge is entered.

Accordingly, the Court finds the Plan can be confirmed under § 1191(b).

**2.      Is a Temporary Injunction Allowable under the Facts of this Case?**

The Plan, as amended, seeks a temporary injunction on actions by creditors against any guarantor, Insider, or Affiliate of the Debtor, as follows:

> Consistent with and to the fullest extent permitted under *In re Eng'g Recruiting Experts*, 2025 Bankr. LEXIS 2169 (Bankr. M.D. Fla. Sep. 2, 2025) (Burgess, J.), and *In re Miracle Rest. Grp.*, LLC, 2025 Bankr. LEXIS 1188 (Bankr. E.D. La. May 13, 2025) (Grabill, J.):

>> Notwithstanding anything contained herein to the contrary, neither the guarantors, Insiders, nor the Affiliates of the Debtor shall be discharged and released from liability, if any, for Claims and debts arising under or in connection with the Debtor or this Subchapter V Case and/or otherwise addressed and/or treated in this Plan. However, absent further Court order upon notice and hearing, the exclusive remedy for payment of any Claim or debt addressed in this Plan, so long as the Plan is not in default, shall be the Plan and all parties classified in and under Article 4, herein, are enjoined from taking any action inconsistent herewith, including, but not limited to, any action to prosecute or collect any debt or Claim against any guarantor, Insider, or Affiliate; provided however, that all creditors shall retain the right to pursue any third-party guarantor for any debts not addressed in this Plan and the discharge under 11 U.S.C. § 1192 shall not apply to any third-party guarantor. To the extent necessary, any applicable statute of limitations against collection from any third party is specifically tolled from the period from the Petition Date until the date upon which the Debtor fails to cure any written

8

> notice of default as set forth in the Plan and/or
> any applicable loan documents.

*See* Third Amended Plan, p. 15 (ECF #108) (capitalized terms are defined in the Plan). To be clear, this provision does not discharge guarantors, Insiders, or Affiliates, and if the Debtor should ever default on the Plan, the injunction lifts to permit actions against guarantors, Insiders, or Affiliates to proceed. This provision is aimed at preventing creditors of the Debtor from pursuing those guarantors, Insiders, or Affiliates so that the Debtor can devote maximum effort to successfully completing the Plan.

The U.S. Trustee objects to the temporary injunction (ECF## 82 and 104), asserting that the United States Supreme Court and the Fifth Circuit do not allow non-consensual permanent third-party releases; and the U.S. Trustee also cites cases that have held that temporary third-party releases (i.e., those that only apply until the Debtor defaults on the Plan) are also not allowed. The U.S. Trustee's Objections do not discuss the cases the Debtor cites in the Plan, however.

The Court has examined the cases cited by the U.S. Trustee and the Debtor and finds the Court's reasoning in *In re Miracle Rest. Grp.*, LLC, No. 24-11158, 2025 WL 1400915 (Bankr. E.D. La. May 13, 2025), persuasive. There, the court engaged in a detailed analysis of the Fifth Circuit's opinion in *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746 (5th Cir. 1995), which permitted non-consensual, non-debtor releases and permanent injunctions. It further explained that *Zale Corp.* was not affected by the Supreme Court's decision in *Harrington v. Purdue Pharma L.P. (In re Purdue Pharma)*, 603 U.S. 204, 227 (2024), or the Fifth Circuit's decision in *Highland Capital Management Fund Advisors, L.P. v. Highland Capital Management, L.P. (In re Highland Capital Management, L.P.)*, 132 F.4th 353 (5th Cir. 2025) (referred to as *Highland II* in the *Miracle* opinion), which concerned permanent third-party injunctions, effectively granting third parties the benefits of the Debtor's discharge on a permanent basis. After discussing *Zale Corp.*, *Purdue*, and *Highland II*, as well as other cases, the *Miracle* court concluded:

9

The *Zale Corp.* court noted supporting cases identifying examples of "unusual circumstances" warranting temporary injunctions: *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) ("Such circumstances usually include when the debtor and the non-bankrupt party are closely related or the stay contributes to the debtor's reorganization."); *S.E.C. v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992) ("In bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1003–06 (4th Cir. 1986) (stating that a § 105 injunction may be appropriate where proceeding would have an adverse impact on the debtor's ability to reorganize or deplete property of estate).

Thus, although dicta, the *Zale Corp.* court clearly recognized that circumstances may arise in a bankruptcy case justifying the issuance of a temporary injunction of non-debtor actions through the plan confirmation process. This Court finds that *Zale Corp.* continues to be a valid legal proposition.

*Miracle*, 2025 WL 1400915, at *8.

This Court agrees with *Miracle* and also finds that *Zale Corp.* remains viable post *Purdue Pharma* and *Highland II.* Thus, this Court holds that temporary third-party injunctions may be allowable in a Chapter 11 plan provided the debtor shows that the injunction is necessary to the viability of the plan.

Here, the temporary injunction is appropriately limited to non-bankrupt parties who are closely related to the Debtor, and the injunction is important to the Debtor's reorganization. It also improves the likelihood of feasibility by allowing the Debtor and closely related parties to work on completing the Plan payments without being concerned about litigation around the periphery. It is also noteworthy that creditors who may be affected by the injunction have voted to confirm the Plan.

Accordingly, the Court will permit the temporary injunction in this case and thus overrules the U.S. Trustee's objection on this point.[4]

---

[4] Whether a proposed temporary injunction in a plan is acceptable depends on the circumstances and facts of each case and thus should be considered on a case-by-case basis.

### 3. Is a Monthly Savings Account Allowable?

The Plan proposes to allow the Debtor to make monthly deposits into a savings account (defined in the Plan as a "Savings Fund") in the amount of $1,000 per month during months 13 through 54 of the Plan and $2,000 per month during months 55 through 60. *See* Third Amended Plan, pp. 12-13. If allowed, by the end of the Plan the Debtor will have accumulated over $50,000 in the Fund. The Plan states that this provision is intended to be "consistent with the savings plans provisions permitted in Chapter 13 cases in the Southern District of Texas." *Id.* The Plan further states: "The Debtor may request withdrawals from the Savings Fund to make payments under this Plan and as a form of an 'appropriate default remedy' if this Plan is confirmed under section 1191(b)." *Id.* Finally, the Debtor is authorized to retain these funds upon completion of the plan, dismissal of the case, or conversion to chapter 7, except as provided in § 348(f)(2). *Id.*

The U.S. Trustee objects to this provision on the grounds that the funds placed into savings are "disposable income" under § 1192(d) that must be dedicated to making plan payments under § 1191(c)(2). The U.S. Trustee argues that these funds should be dedicated to paying unsecured creditors.

In theory, the inclusion of a savings provision makes some sense, as it could provide a cushion to the Debtor if he comes upon hard times due to needed repairs to equipment and similar expenses. To be allowed, however, at the very least the Debtor must show that the funds to be deposited into the Savings Fund are "necessary for the continuation, preservation, or operation" of the Debtor's business, and thus excluded from disposable income. *See* 11 U.S.C. § 1192(2)(d) (Disposable income does not include income for the payment of expenditures necessary for the "continuation, preservation, or operation of the business of the debtor."). The Debtor has made no such showing here. Moreover, the Debtor provides no analysis or discussion as to how such a provision fits within the requirement that the Debtor dedicate all of his "projected disposable income" to payments under the Plan, as required for confirmation under § 1191(b) and (c)(2)(A).

11

Simply put, the Debtor has cited no statutory support for applying this novel policy in this Chapter 11 case. Indeed, the proposed Savings Fund appears to conflict with the statutory requirement for confirmation under § 1191(b) that the Debtor's projected disposable income be dedicated to making plan payments. Accordingly, the Court sustains the U.S. Trustee's objection on this issue and finds that the Savings Fund provisions of the Plan should be deleted.

**4.      Is the Debtor entitled to a Discharge after Three Years?**

The U.S. Trustee also objects to the proposal in the Plan that provides the Debtor a discharge after only three years of payments, even though the Debtor's payment obligations continue for five years. *See* U.S. Trustee Objection, p. 6 (ECF #104). Section 1192 of the Code provides, in part: "If the plan of the debtor is confirmed under section 1191(b) of this title, as soon as practicable after completion by the debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix . . . the court shall grant the debtor a discharge . . ." 11 U.S.C. § 1192.

Since the Plan is being confirmed under § 1191(b), and since it provides for five years of payments, the Court finds the U.S. Trustee's objection has merit and is therefore sustained on this issue. The Debtor shall amend the discharge provision of the Plan (Article 9) to delay discharge until the end of the five-year Plan period.

**Conclusion**

For the foregoing reasons, the Court sustains the U.S. Trustee's objections as to consensual confirmation, the savings account provision, and discharge after three years. The Court overrules the U.S. Trustee's objection as to third-party injunctions. The Court will enter an Order requiring the Debtor to amend the Plan in accordance with this decision, which can be confirmed as a nonconsensual Plan under § 1191(b).